Filed 07/05/24



| VERMONT SUPERIOR COURT | CIVIL DIVISION |
| Washington Unit | Case No. 23-CV-03916 |
| 65 State Street | |
| Montpelier VT  05602 | |
| 802-828-2091 | |
| www.vermontjudiciary.org | |

---

In Re:  Department of Financial Regulation

---

## Opinion and Order on Motions to Enforce and to Quash

This case arises out of a New Jersey lawsuit in which numerous insurers, among them Travelers Casualty and Surety Company (Travelers) and Middlesex Assurance Company (Middlesex), are seeking to determine the scope of their potential liability in relation to the myriad tort suits filed against Johnson & Johnson related entities ("JNJ") for alleged harm caused by JNJ's talc products.  Middlesex is JNJ's longtime, Vermont-licensed captive insurance company.  This case began when Travelers sought an out-of-state subpoena compelling Middlesex's regulator, the Vermont Department of Financial Regulation (DFR) to produce a broad variety of documents related to DFR's supervision of Middlesex.  *See* Vt. R. Civ. P. 45(f) (interstate depositions and discovery).  DFR resisted production, prompting Travelers to file a motion to enforce.  Subsequently, DFR filed a motion to quash asserting that the documents are confidential under Vermont statutory law.  The Court held a hearing on the dueling requests on June 18, 2024.  The matter boils down to whether an exception to Vermont's statutory confidentiality of the materials sought permits Travelers' request.

Middlesex voluntarily appeared in this case, identifying itself as an interested party, to register its opposition to Travelers' motion to enforce.  Travelers asks the Court to disregard Middlesex's briefing because it has no "standing" as this is simply a third-

party discovery dispute between it and DFR. It is not clear that there is anything in Middlesex's briefing that does not also appear in DFR's briefing. Regardless, Middlesex is not an improper party here. It plainly has a substantial interest in the records that it voluntarily submitted to its regulator with the expectation that they would remain confidential. *See* 9A Arthur R. Miller, *et al., Fed. Prac. & Proc. Civ.* § 2459 (3d ed.) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought. This personal right or privilege standard has been recognized in numerous cases." (footnotes omitted)). Had it sought to intervene, the Court would likely have granted the motion. As it did not, however, the Court indicated at hearing that it would allow it and its arguments to be considered as an *amicus curiae* submission.

The subpoena includes a number of requests to produce that are framed broadly to seek all evidence that DFR might possess that could be relevant to the New Jersey litigation. The materials in DFR's possession are subject to two confidentiality provisions in relevant statutes: 8 V.S.A. §§ 6002(c)(3), 6008(c). Section 6002 and its confidentiality requirement apply broadly to document submissions related to licensing, detailed in 8 V.S.A. § 6002(c)(1), (2). There is a limited exception to this rule of confidentiality at § 6002(c)(3)(A). Section 6008 applies to examinations and investigations. There is no exception to this rule of confidentiality. Travelers conceded at the June 18 hearing that examination and investigation materials within the scope of § 6008 are not subject to production and that its Request No. 6 falls within that prohibition. The Court agrees with that assessment.

The key question in this case is how broadly or narrowly to interpret the exception

for § 6002 licensing materials.  Travelers essentially takes the position that the exception

expansively permits it to seek any discovery from DFR that is relevant to the New Jersey

litigation.  An examination of the statutory language, however, reveals that the exception

is quite limited and is not amenable to the sort of broad requests asserted by Travelers.

The exception at 8 V.S.A. § 6002(c)(3)(A) provides as follows:

(A) such information may be discoverable by a party in a civil action or
contested case to which the captive insurance company that submitted such
information is a party, upon a showing by the party seeking to discover such
information that:
    (i) the information sought is relevant to and necessary for the
furtherance of such action or case;
    (ii) the information sought is unavailable from other nonconfidential
sources; and
    (iii) a subpoena issued by a judicial or administrative officer of
competent jurisdiction has been submitted to the Commissioner;
provided, however, that the provisions of this subdivision (3) shall not
apply to any risk retention group.

Under that provision, to be entitled to production from DFR, the requesting party

must establish three components:  the records are "relevant to *and* necessary for" the

third-party litigation and "unavailable from other nonconfidential sources."  These are

threshold matters that must be established before DFR has any obligation to produce.

They indicate to the Court a strong policy in favor of confidentiality that may be

overcome only if the requesting party makes a multi-faceted showing.

Travelers interprets away the necessity and unavailability requirements as being

easily satisfied.  It maintains that it cannot determine whether DFR possesses a record

that is necessary to the New Jersey litigation without first seeing what DFR possesses.

But this argument turns the statute on its head.  The necessity showing must be made

*before* DFR has any obligation to produce anything.  To demonstrate necessity, a

requester must have some clear idea of what is being sought.  The fact that such a showing may be difficult and only possible in limited circumstances does not alter the statutory demand.  A party cannot just throw a net to DFR on the hunch that it will have documents that are "necessary" for use in a court case.

Travelers also attempts to sweep away the expression "unavailable from other nonconfidential sources" by interpreting it to mean merely "not publicly available."  In other words, if it is publicly available, you have to get it there; if it is not publicly available, DFR has to produce it.  It contends that, even if Middlesex or other litigants in the NJ litigation have the responsive material and are willing (or ordered) to produce it, they simply are not "nonconfidential sources" insofar as they have no duty to make that material available to the public as a general matter.

Travelers' interpretation of the statutory expression conflicts with the plain meaning of the exception and makes it virtually meaningless.  Properly viewed, this provision requires the requester to show that the requested material is unavailable from another source that is not protected by a rule of confidentiality.  In other words, if someone else has the record, but the requester has no method to obtain it because it is properly retained as confidential, then this aspect of the exception may apply.  Here, however, if Travelers can get the materials in discovery in the course of the NJ litigation, they are  available from "other nonconfidential sources."  As to Travelers in that litigation context, such a source is nonconfidential.  Travelers' contrary interpretation would mean that DFR materials would potentially be subject to disclosure any time a captive insurance company is a party to litigation.  The exception cannot so easily be satisfied, however.

In this regard, Travelers' reliance on *Finberg v. Murnane*, 159 Vt. 431 (1992), to derive the meaning of "nonconfidential sources" in the statute at issue is misplaced. *Finberg* addressed a request for production under Vermont's Access to Public Records Act, 1 V.S.A. § 315–320. One issue was whether the requested records were nonpublic because the information in them was taken from confidential tax returns or related documents or publicly available because it was derived from publicly accessible sources. In discussing the issue, the Court used the expressions *non-confidential source* and *confidential source*. *See, e.g., Finberg*, 159 Vt. at 436 ("To the extent the information came from a non-confidential source, it is subject to disclosure even if it also came from a confidential source."). *Finberg* used those expressions in the decision, but they were not statutory expressions being interpreted. *Finberg* sheds no light on the statutory language at issue in this case.

Together, the (a) relevant and necessary and (b) unavailable from other nonconfidential sources provisions indicate clearly that the Legislature intended this exception to be quite limited to circumstances of manifest need, when other sources for the information do not exist. In those circumstances, DFR may be a source of last resort. The confidentiality provisions plainly are intended to induce captive insurance licensees to be forthcoming with materials and fully commit to ongoing scrutiny from DFR. An exception that swallows the rule, as Travelers would have it, would undermine that critical purpose.

In this instance, DFR has not taken the position that it would never produce the materials requested in this case. It argues that the current requests are dramatically

overbroad, and that Travelers has not reasonably exhausted efforts to obtain them in the New Jersey litigation. The Court agrees on both counts.

Travelers has put together a matrix ostensibly cross-referencing requests here with discovery requests in the New Jersey litigation to show that it in fact has requested this material there, and it has not yet been produced. What the matrix mostly shows, however, is that a patchwork of extremely broad requests framed in different language to some extent overlaps. The record is clear that discovery in New Jersey is ongoing, and Travelers has not reasonably exhausted efforts to obtain what it seeks in that forum. Indeed, there is a Special Master in that case that can address Travelers' needs for discovery should Middlesex fail to produce needed documents without proper excuse.

Given those determinations, Travelers has failed to show unavailability, and it has not even attempted to show necessity, other than via speculation. Its requests are wholly out of step with the narrow exception to confidentiality set out in § 6002(c)(3)(A).[1]

The Court is aware that Act 110, effective July 1, 2024, essentially eliminates the litigation exception that Travelers has sought to rely on in this case, raising the prospect that if it cannot obtain materials from DFR now, it may never be able to. The Court does not rely on this change in the law to bolster its views on the scope of the exception so long as it exists. *See* 2A *Sutherland Statutory Construction* § 48:20 (7th ed.) ("[A] subsequent

---

[1] Some of Travelers' briefing suggests that DFR may have documents that Middlesex no longer has. If so, the path to such records is through the New Jersey litigation. There, such documents, if any, could be identified, production could be ordered, and Middlesex could need to go on record indicating that the records no longer exist. At that point, a request directed to DFR for that specific document might have more traction. The broad request to DFR at issue in this case is simply antithetical to Vermont's narrowly cabined exceptions to confidentiality.

legislature may change an act to achieve whatever prospective meaning or effect it desires, but courts generally give little or no weight to the views of members of subsequent legislatures about the meaning of acts passed by previous legislatures."). Similarly, however, the Court cannot rely on the exception's impending disappearance to apply the exception more broadly than the current statutory language now permits.[2]

WHEREFORE, Travelers' motion to enforce is denied. DFR's motion to quash is granted.

Electronically signed on Tuesday, July 2, 2024, per V.R.E.F. 9(d).

_____
Timothy B. Tomasi
Superior Court Judge

---

[2] Other paths to production may also exist. At the June 18 hearing, the Court questioned whether records in DFR's possession might be treated as within Middlesex's control for purposes of document production in the New Jersey litigation. *See Castle v. Sherburne Corp.*, 141 Vt. 157, 166 (1982) ("[T]he critical inquiry in determining Rule 34 'control' is 'whether the party from whom the materials are sought has the practical ability to obtain those materials.'" (citation omitted)); 8B Richard L. Marcus, *et al. Fed. Prac. & Proc. Civ.* § 2210 (3d ed.) ("Inspection can be had if the party to whom the request is made has the legal right to obtain the document, even though in fact it has no copy."). While DFR indicated that Middlesex had authority to consent to the release of such records, counsel for Travelers expressed skepticism. The Court need not resolve that matter to determine the present motions. Further, any dispute over whether DFR records are within the control of Middlesex would more appropriately be answered by the New Jersey court.